**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 14-149-DLB-JGW**

**J.R.**                                                                                                         **PLAINTIFF**

vs.                                          **MEMORANDUM OPINION AND ORDER**

**TERRI COX-CRUEY, ET AL.**                                                         **DEFENDANTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**I.     Introduction**

This is an action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1450, in which Plaintiff J.R.[1] contests the decision of a Kentucky administrative body known as the Exceptional Children Appeals Board ("ECAB"). Defendants Kenton County Board of Education ("KCBE") and several of its named representatives move to dismiss based on two alternative grounds. First, because J.R.'s appeal to the ECAB was denied as untimely, they submit that she has failed to properly exhaust her available administrative remedies, and as such the Court lacks subject matter jurisdiction to hear this case. If jurisdiction is proper, however, Defendants contend that one issue in particular is barred by the doctrine of *res judicata*; namely, whether J.R. is entitled to free appropriate public education ("FAPE") beyond her 21st birthday.[2] For the

---

[1] The plaintiff has requested that she be referred to by pseudonym throughout this proceeding in order to protect her identity. (Doc. # 1 at 10).

[2] Leaving aside Defendants' argument that J.R. has failed to properly exhaust her administrative remedies, the Court has jurisdiction over this matter pursuant to 20 U.S.C. §§ 1415(i)(2)(A) & (3)(A).

1

reasons discussed below, Defendants' Motion to Dismiss will be **granted**.

## II.   Factual and Procedural Background

J.R. is a 23 year-old female who resides with her parents in Park Hills, Kentucky. (Doc. # 5-2 at 1).  In April 2010, during her senior year of high school, she was involved in a serious car accident and suffered a debilitating brain injury.  (*Id.*)  As part of the rehabilitation process, her parents began exploring educational opportunities within the Kenton County School District ("KCSD" or the "School District").  (*Id.* at 2).  They eventually learned that J.R. was eligible to attend Dixie Heights High School ("Dixie") in Crestview Hills, Kentucky.  (*Id.* at 2).  Her father contacted the school in November 2011 and completed the necessary paperwork to enroll his daughter as a student.  (*Id.*)  J.R. started special education classes in January 2012.  (*Id.*)  At the time, she was 19 years old and would turn 20 the following month.  (*Id.*)

While at Dixie, J.R. was served by an Individual Education Plan ("IEP") based on the disability category "Traumatic Brain Injury."  (Doc. # 1 at 2).  Although from the outset the IEP clearly stated that all services would expire upon J.R.'s 21st birthday,[3] her parents believed she was entitled by law to remain in school until she reached the age of 22. (Doc. # 5-1 at 2).  Thus, on January 30, 2013, through counsel, they contacted the Kentucky Department of Education ("KDE"), Office of Exceptional Children, and requested a due process hearing under the applicable sections of the IDEA, specifically seeking the following relief:

---

[3] J.R.'s 21st birthday was February 28, 2013.  (Doc. # 5-1 at 2).  Thus, her original IEP contemplated approximately fourteen months of educational services.

2

 1) The assignment of a hearing officer;

 2) An immediate determination that [J.R.] must stay-put in her current educational placement at Dixie Heights High School during the pendency of this action;

 3) An Order requiring the Kenton County School District to allow [J.R.] to receive a free appropriate public education until at least her twenty-second birthday;

 4) A finding that the termination of [J.R.]'s educational services prior to her twenty-second birthday is a denial of her right to a free appropriate public education;

 5) An Order requiring the Kenton County School District to hereinafter make appropriate placement decisions for [J.R.] in accordance with 707 KAR 1:350;

 6) Attorney fees for [J.R.]'s attorneys of record; and

 7) All such other relief that the hearing officer may deem appropriate.

(Administrative File at 1-3). The KDE selected Paul Whalen as the hearing officer to preside over J.R.'s hearing, which was scheduled to take place towards the end of the 2012-2013 school year. (Administrative File at 4).

 Mr. Whalen conducted the first pre-hearing conference on February 6, 2013, at which point the parties agreed to attempt mediation. (Doc. # 5-1 at 2). Following the conference, Mr. Whalen entered a "stay-put" order, allowing J.R. to remain at Dixie beyond her 21st birthday and throughout the parties' mediation attempts. (*Id.*) When mediation proved unsuccessful, the KCSD moved to dissolve the "stay-put" order, but Mr. Whalen denied that request. (*Id.*) Instead, he ordered that J.R. would "continue in her current education placement until the end of the 2012-2013 school year," reasoning that "Kentucky Administrative Regulations and practice in the Commonwealth allow students to finish the school year in which they turn age 21." (Administrative File at 24).

3

The due process hearing began as scheduled on May 21, 2013. (Doc. # 5-1 at 3). On the second day of hearings, J.R. moved for an open-ended extension of the "stay-put" order, which was set to expire later that week. (Administrative File at 66-67). Mr. Whalen denied her request in writing on June 12, 2013. (*Id.*) While hearings continued, J.R. appealed his decision to this Court and filed a motion for injunctive relief shortly thereafter. (Doc. # 5-1 at 3). A "stay-put" order was required by law, she explained, at least until the due process action was finally resolved (which would not occur until November 2013). (*Id.*) The Court disagreed, though, ruling on August 13, 2013, that a "stay-put" order was no longer applicable because J.R.'s right to FAPE had expired when she turned 21. *J.R. v. Cox-Cruey*, Case No. 13-109-DLB, 2013 WL 4101968, at *6 (E.D. Ky. Aug. 13, 2013). J.R. appealed the Court's decision to the Sixth Circuit Court of Appeals, but her notice was dismissed as untimely, as it was filed one day after the thirty-day deadline. (Doc. # 5-2).

Mr. Whalen issued his final due process decision on November 6, 2013, in which he addressed the following nine questions:

1) Should [J.R.] stay-put in [her] current educational placement within the School District during the pendency of this action?

2) Should [J.R.] be deemed eligible to receive a free appropriate public education (FAPE) until at least [her] twenty-second birthday? Is this the correct interpretation of 20 U.S.C. § 1412(a)(A) and related case law?

3) Is the termination of [J.R.'s] educational services (at age 21) a denial of [her] right to a free appropriate public education (FAPE) pursuant to 707 KAR 1:290 and 20 U.S.C. § 1412?

4) Has the School District made appropriate placement decisions for [J.R] in accordance with 707 KAR 1:350?

5) Has the School District failed to ensure that [J.R.] had an appropriate Individual Education Plan (IEP), including extended school year services (ESY) and related services, from the 2011-2012 school year until the present

>time in violation of 707 KAR 1:320?
>
>6) Whether or not the School District failed to engage in meaningful and appropriate transition services, as defined in 707 KAR 1:002, and in violation of 707 KAR 1:320?
>
>7) Did the School District deny [J.R.] the right to a free appropriate public education in violation of 707 KAR 1:290 for the period November 16, 2011 through January 2, 2012? Is [J.R.] entitled to Compensatory Education for this period?
>
>8) Should [J.R.'s] parents be reimbursed for transportation services they provided [J.R.] while [she] was attending school?
>
>9) Is [J.R.] entitled to attorney's fees?

(*See* Doc. # 1-2).[4]

With respect to the first six questions, Mr. Whalen's findings were not favorable to J.R. Under the IDEA and Kentucky law, he found that she was not entitled to receive educational services beyond her 21st birthday, and also concluded that the School District had provided appropriate IEPs and meaningful transition services. (*Id.* at 14-23). As for the seventh question, however, Mr. Whalen awarded compensatory education for a brief period of time between J.R.'s enrollment in November 2011 and the first day of classes in January 2012. (*Id.* at 23-24). And regarding the eighth question, he found that J.R.'s parents were entitled to reimbursement for transportation services they provided to and from certain school-related activities. (*Id.* at 24-25). Finally, Mr. Whalen determined that he had no authority under the IDEA to award attorney's fees or costs. (*Id.* at 25).

Unsatisfied with the outcome, J.R. sent notice of appeal to the KDE's Division of Exceptional Children Services. (Administrative File at 199). Although it appears her

---

[4] J.R. had amended her original due process complaint on two separate occasions, adding a total of three additional issues for the hearing officer's consideration.

petition was mailed within thirty days of Mr. Whalen's final decision, it was not sent by certified mail in accordance with 707 KAR 1:340(12), and the KDE denied her appeal as untimely.[5] J.R. immediately filed a motion for extension of time, explaining that inclement weather and driving conditions in northern Kentucky had prevented her from using certified mail. (Administrative File at 203). However, Mr. Whalen found that the regulation was unambiguous and compulsory, and promptly denied her request for additional time. (Administrative File at 208-10).

J.R. filed a motion to reconsider Mr. Whalen's decision on December 31, 2013. (Administrative File at 211-13). The parties briefed the issue, and in her reply memorandum J.R. cited to a prior case in which the ECAB chose not to dismiss a student's appeal even though he had failed to comply with the certified mailing requirement. (Administrative File at 218-28). Evidently, Mr. Whalen felt bound by the outcome of that case.[6] In a brief order noting his duty to respect *stare decisis*, he reversed his previous position and instructed J.R. to proceed with her appeal, which she did. (Administrative File at 230).

---

[5] In the certificate of service, J.R.'s attorney states that the notice of appeal was mailed on December 6, 2013, exactly thirty days after Mr. Whalen's final decision of November 6, 2013. (Administrative File at 200). KDE Assistant General Counsel David Wichersham emailed J.R.'s attorney on December 9, 2013, to inform her that the KDE had received her appeal that day. (Doc. # 8-4 at 3). He also stated that the appeal had been denied. (*Id.*) Although Wickersham does not identify the precise reason in his letter, it is clear from the record that the KDE's decision was based on the fact that J.R. did not use certified mail to send her appeal, meaning it was not properly perfected within the regulatory deadline. (*Id.*) Wickersham also explained that J.R. was free to file a motion for extension of time with the hearing officer presiding over her case. (*Id.*)

[6] Frankly, the Court is not surprised that Mr. Whalen chose to follow the ECAB's prior decision, seeing as he was the ECAB Chair at that time and happened to write the supporting opinion. As the Court will explain in greater detail below, J.R.'s case and this prior decision are factually distinct in several important respects.

After extensive briefing from both parties, the ECAB issued its decision on June 11, 2014. (Doc. # 5-3). As a threshold matter, it distinguished the decision cited in J.R.'s motion to reconsider and found that the appeal in this case was indeed untimely. (*Id.* at 5-7). Accordingly, it dismissed her petition and affirmed the findings and conclusions in Mr. Whalen's order of November 6, 2013. (*Id.*) Recognizing the potential for judicial review, the ECAB also addressed the remaining issues on the merits. (*Id.* at 1). In doing so, it determined that J.R. was provided with meaningful IEPs and proper transitional services, and that she was not entitled to FAPE beyond her 21st birthday (apart from what she had already received). (*Id.* at 7-14). It also agreed that only the courts had authority under the IDEA to award attorney's fees or costs. (*Id.* at 9). Unlike Mr. Whalen, though, it concluded that J.R. should not receive any compensatory education, (*id.* at 10-11), and that her parents should not be reimbursed for the alleged transportation services they provided. (*Id.* at 16-19). In other words, the ECAB found against J.R. as to all issues presented.[7]

J.R. appealed to this Court on August 11, 2014. (Doc. # 1). In her complaint, she requests the following relief: 1) complete reversal of the ECAB's decision; 2) an order requiring Defendants to provide her with educational services during the pendency of this action; 3) compensatory education for prior periods in which she was denied access to FAPE; 4) reimbursement for all out-of-pocket educational expenses incurred by her parents; 5) the opportunity to present new evidence; and 6) attorney's fees and expenses. (Doc. # 1 at 9-10).

---

[7] However, as stated above, these findings were only advisory in nature, as the ECAB upheld all aspects of Mr. Whalen's November 6, 2013 order upon determining that J.R.'s appeal was not timely filed.

In their Motion to Dismiss, Defendants cite two arguments in support of dismissal. (Doc. # 5). First, because J.R.'s appeal to the ECAB was denied as untimely, they submit that she has failed to properly exhaust her available administrative remedies, and as such the Court lacks subject matter jurisdiction to hear this case. (*Id.* at 4-7). Alternatively, and assuming jurisdiction is proper, they contend that one issue in particular is barred by the doctrine of *res judicata*; namely, whether J.R. is entitled to FAPE beyond her 21st birthday. (*Id.* at 7-8). Defendants' Motion has been fully briefed and is therefore ripe for the Court's review. (Docs. # 8 and 9).

## III. Analysis

### A. Standard of Review

#### 1. Motion to Dismiss

Though Defendants have failed to explicitly identify the rules upon which their Motion is based, the arguments they raise implicate Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court will consider their 12(b)(1) argument first as any remaining arguments would be moot if subject matter jurisdiction is lacking. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (*citing Bell v. Hood*, 327 U.S. 678, 682 (1946) for the proposition that a "motion to dismiss for failure to state a cause of action may be decided only after establishing subject matter jurisdiction, since determination of the validity of the claim is, in itself, an exercise of jurisdiction.").

A defendant is entitled to assert lack of subject matter jurisdiction as an affirmative defense in a timely filed motion to dismiss. Rule 12(b)(1); *Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). "Where

subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Id.* (citing *Moir*, 895 F.2d at 269). In particular, a plaintiff must show that the complaint alleges a claim under federal law, and that the claim is substantial. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 n.1 (6th Cir. 1996).

In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [her] factual allegations as true." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted). "When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Id.* However, the Court is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).

### 2. Judicial Review Under the IDEA

The IDEA states the following with respect to judicial review of an administrative decision:

> In any action brought under this paragraph, the court
>
> (I) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415 (i)(2)(c).

The Sixth Circuit has interpreted this section as imposing a "modified *de novo*" standard of review. *Doe v. Bd. of Educ. of Tullahoma City Schs.*, 9 F.3d 455, 458 (6th Cir. 1993). This means that district courts should make "independent decisions" based on a preponderance of the evidence, while affording "due weight" to the determinations made during the state administrative process. *Knable v. Bexley City School Dist.*, 238 F.3d 755, 764 (6th Cir. 2001) (citing *Bd. of Educ. of Henrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

The term "due weight" does not imply that courts should "simply adopt the state administrative findings without an independent re-examination of the evidence." *Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir. 1998). That said, courts should refrain from "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Tullahoma City Schs.*, 9 F.3d at 458 (*quoting Rowley*, 458 U.S. at 206). An administrative decision should be set aside only if the evidence is "more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational experience, a fair estimate of the worth of the testimony, or both." *N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611, 614 (6th Cir. 2014).

Where a state has implemented a two-tiered administrative process, the potential exists for conflicting conclusions at each level. In such instances, "federal courts are required to defer to the final decision of the state authorities." *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 624 (6th Cir. 1990). In Kentucky, the final decision is that of the ECAB. *See* 707 KAR 1:340 (12) ("A party to a due process hearing that is aggrieved by the hearing decision may appeal the decision to members of the Exceptional Children

Appeal Board as assigned by the Kentucky Department of Education.").

### B. Exhaustion of Available Administrative Remedies

The IDEA states that "before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."[8] 20 U.S.C. § 1415(l). Exhaustion enables "the state to apply its expertise in an area where the needs of a handicapped child are better served by having the parents and local educational agencies work together." *Doe By & Through Doe v. Smith*, 879 F.2d 1340, 1343-44 (6th Cir. 1989). Moreover, it allows the "issues to be thoroughly vetted, and hopefully resolved, without court intervention." *Doe ex rel. Doe v. Dublin City Sch. Dist.*, 453 F. App'x 606, 608 (6th Cir. 2011).

It is well-settled that a party who fails to exhaust her administrative remedies deprives a reviewing court of subject matter jurisdiction under the IDEA. *See Honig v. Doe*, 484 U.S. 305, 326-27 (1988) ("[J]udicial review is normally not available under [the IDEA] until all administrative proceedings are completed."); *see also Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000); *Dublin City*, 453 F. App'x at 608; *Smith*, 879 F.2d at 1343. Exceptions to the exhaustion requirement are rare, and the burden of establishing that one applies rests with the party seeking to forgo the established administrative process. *Covington*, 205 F.3d at 917 (explaining that exhaustion is unnecessary only under "certain circumstances," such as where "it would be futile or inadequate to protect the plaintiff's rights," or when "plaintiffs were not given full notice of their procedural rights under

---

[8] Subsections (f) and (g) provide for a due process hearing and appeal at the state agency level. 20 U.S.C. §§ 1415(f), (g).

the IDEA."). Neither party has argued that an exception is applicable to this case.

In a variety of different contexts, the Sixth Circuit has ruled that exhaustion was lacking where a party's administrative appeal had been dismissed as untimely. *See, e.g., Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003) ("This Court has no jurisdiction to review the immigration judge's decision . . . because Sswajje failed to exhaust all available administrative remedies by filing a timely appeal to the BIA."); *Gutierrez v. R.R. Ret. Bd.*, 918 F.2d 567, 570 (6th Cir. 1990) (the court lacked jurisdiction to review a decision of the Railroad Retirement Board because Guitierrez's untimely appeal to the Bureau of Hearings and Appeals "constitutes a failure to exhaust the administrative remedies within the Board"); *Blevins v. Dir., Office of Workers' Comp. Programs, U. S. Dep't of Labor*, 683 F.2d 139, 143 (6th Cir. 1982) ("[A] claimant who fails to appeal the order of an ALJ to the [Benefits Review Board] within the allotted thirty-day period . . . is precluded from raising that issue on a petition for review in this Court.").

Courts in other jurisdictions have made the same finding in cases arising under the IDEA. In *T.W. v. Spencerport Central School District*, the student was several weeks late in appealing her case to the State Review Officer, New York's counterpart to the ECAB. 891 F. Supp. 2d 438, 439 (W.D.N.Y. 2012). In granting the school district's motion to dismiss, the court explained that "[a] party whose appeal is dismissed as untimely will be deemed to have failed to exhaust the available administrative remedies, and the courts will be deprived of subject matter jurisdiction over the matter." *Id.* at 440 (citing *Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir.2002)). *See also B.C. ex rel. B.M. v. Pine Plains Cent. Sch. Dist.*, 971 F. Supp. 2d 356, 365-67 (S.D.N.Y. 2013) (same); *Kelly ex rel. M.K. v. Saratoga Springs City Sch. Dist.*, Case No.

109-CV-276, 2009 WL 3163146, at *5 (N.D.N.Y. Sept. 25, 2009) (same).

In light of these principles, the Court must initially determine whether it was proper for the ECAB to dismiss J.R.'s appeal as untimely. If it was, then J.R. has failed to exhaust her administrative remedies and the Court lacks jurisdiction to hear this case. Since Defendants have posed this argument in a properly supported motion to dismiss, the burden is on J.R. to show that the ECAB erred by denying her appeal. *Branch & St. Joseph Cntys. Rail Users Ass'n, Inc.*, 287 F.3d at 573.

### C. J.R.'s Appeal was Properly Dismissed as Untimely

A state agency that receives assistance under the IDEA is required to establish procedural safeguards to protect the rights of disabled children who are potentially entitled to FAPE. 20 U.S.C. §§ 1415(a), (g). Pursuant to this mandate, the KDE has enacted regulations governing the manner in which a student may appeal the outcome of an unfavorable hearing. Applicable to this case, 707 KAR 1:340(12) states as follows:

> A party to a due process hearing that is aggrieved by the hearing decision may appeal the decision to members of the Exceptional Children Appeals Board as assigned by the Kentucky Department of Education. The appeal shall be perfected by sending, *by certified mail*, to the Kentucky Department of Education, a request for appeal, within thirty (30) calendar days of the date of the hearing officer's decision.

(emphasis added).[9]

---

[9] The regulation states that notice of appeal must be mailed *within* 30 days of the hearing officer's final decision. The Court observes that a fair reading of this provision could render J.R.'s appeal untimely regardless of the manner in which it was sent (regular or certified). That is, if the day of Mr. Whalen's decision is counted, 30 days thereafter would expire on December 5th, not December 6th. However, because this point was never raised, the Court assumes that the ECAB interprets the deadline as beginning on the day after the hearing officer's final decision, which is also a fair interpretation.

13

Here, although J.R. appears to have mailed her petition within 30 thirty days of Mr. Whalen's decision, it is undisputed that she did not do so using certified mail.[10] The ECAB dismissed her appeal as a result, reasoning that it had not been properly perfected within the requisite period of time. In support of this decision, the ECAB emphasized that "[t]he deadline under 707 KAR 1:340(12) is tied to sending, and the sole acceptable proof of timely sending . . . is certified mail." (Doc. # 5-3 at 6). It also explained that to interpret the regulation differently "would render the certified mail requirement . . . meaningless and invite evidentiary hearings to determine when and how notice was sent." (*Id.* at 7). The ECAB finally concluded that those who send their appeal using regular mail "do so at their own peril." (*See id.*)

J.R. provides three arguments against the ECAB's decision to dismiss her appeal as untimely. First, because the School District did not separately challenge Mr. Whalen's decision allowing the appeal to go forward, J.R. submits that the ECAB lacked authority to raise this issue *sua sponte.* (Doc. # 8 at 2-3). Of course, such an argument runs contrary to the well-established principle that a reviewing body may always consider whether a case is properly before it. *See F.W. Kerr Chem. Co. v. Crandall Assoc., Inc.*, 815 F.2d 426, 428 (6th Cir. 1987) ("Even where it is not specifically briefed or argued by the parties, this court is obliged to consider *sua sponte* whether appellate jurisdiction is properly invoked."); *United States v. One 1978 Winnebago Seafarer Motor Vehicle, VIN H70580J21516*, 849 F.2d 1474 (6th Cir. 1988) (table) (ordering the action dismissed *sua sponte* for lack of appellate jurisdiction after finding that the notice of appeal was filed three days late). It stands to reason that the same rule would apply to an administrative proceeding, and the

---

[10] J.R. freely admits that her petition was not sent using certified mail. (Doc. # 8 at 1).

Court has found no authority stating otherwise. Accordingly, J.R.'s first argument fails.

Her second argument is based on the following statement: "If the agency receiving the notice of appeal determines that the notice was actually filed within the 30 days, this should be evidence enough that the document was sent prior to the deadline." (Doc. # 8 at 2). In other words, J.R. suggests that by sending her petition via regular mail within the applicable deadline, she has substantially complied with 707 KAR 1:340(12).[11] The problem with this argument is that substantial compliance is a remedy for untimely appeals within the Kentucky *judicial* system. It arises from Kentucky Rule of Civil Procedure 73.02(2), and therefore courts have consistently held that it has no place in the administrative realm. *Taylor v. Kentucky Unemployment Ins. Comm'n*, 382 S.W.3d 826, 831 (Ky. 2012) ("[W]e find no authority before the court to authorize the doctrine of substantial compliance in a case where the appeal process is statutorily created and implemented." (quoting *Kentucky Unemployment Ins. Comm'n v. Carter*, 689 S.W.2d 360, 361 (Ky. 1985))). Thus, reliance on the doctrine of substantial compliance is misplaced under these circumstances.[12]

---

[11] J.R. does not explicitly allude to the doctrine of substantial compliance in her Response. However, the Court is confident that she meant to as this issue was briefed extensively by both parties throughout the proceedings leading up to this appeal.

[12] Although J.R. also does not rely on the doctrine of excusable neglect in her Response, she did allude to it at certain points throughout the due process hearing. In doing so, she explained that she (J.R.'s counsel) was unable to comply with the certified mailing requirement due to the inclement in northern Kentucky in December 2013. Even if this argument was properly before the Court, it would be of no consequence. As with the doctrine of substantial compliance, excusable neglect is a remedy for untimely *judicial* appeals, and is not available in an administrative proceeding unless the governing regulations specifically state otherwise. *See Blevins*, 683 F.2d at 142 (6th Cir. 1982); *Spitzer Great Lakes, Co. v. U.S. E.P.A.*, 173 F.3d 412, 414 (6th Cir. 1999). The Court has looked, and neither doctrine is mentioned anywhere throughout the IDEA or in the corresponding Kentucky regulations.

If, in fact, J.R. was not relying on the doctrine of substantial compliance, then the Court can only assume that her statement conveys general disagreement with the ECAB's somewhat strict interpretation of 707 KAR 1:340(12). While the Court sympathizes with her position, it cannot grant any relief on this basis. The ECAB has offered a reasonable explanation for enforcing the certified mailing requirement, and the Court must defer to the ECAB's judgment in matters of regulatory interpretation. *Ferrans v. Holder*, 612 F.3d 528, 531 (6th Cir. 2010) (explaining that courts should "give deference to an agency's reasonable interpretation of its statute and underlying regulations."); *Twin Res., LLC v. Workman*, 394 S.W.3d 417, 420-21 (Ky. Ct. App. 2013) ("As a general matter, courts afford an administrative agency's construction of its own regulations great weight when determining a regulation's meaning, and an administrative agency's construction of its statutory mandate is entitled to respect."). Thus, either way, J.R.'s second argument is completely without merit.

As her third and final argument, J.R. highlights the ECAB's prior decision, in which it chose not to dismiss another student's appeal even though he had failed to comply with the certified mailing requirement, and asks why her case should be decided any differently. (Doc. # 8 at 2). This question has already been answered. In its decision, the ECAB clearly explained that the purpose of the certified mailing requirement is to document that a petition was sent on or before the regulatory deadline. (Doc. # 5-3 at 7). Although regular mail was used in the prior case, the KDE received the student's petition several days before the deadline for sending it had expired. (*Id.*) Under those circumstances, the ECAB felt comfortable relaxing the certified mailing requirement because it was "a self-evident absolute certainty . . . that the appeal had been sent prior to the deadline." (*Id.*)

In this case, however, J.R. admits that her petition was not sent until December 6th, the very last day on which her appeal could be filed. And because it was sent using regular mail, "KDE records do not reflect that the appeal was received prior to the cutoff date for sending it." (*Id.*)

The distinction between these cases is clear. While in the prior case the KDE received the student's appeal several days *before* the cutoff date, here, J.R.'s petition was received three days *after* the deadline expired. This is relevant because it creates doubt as to when the petition was actually sent – doubt that might have been erased by the proof of mailing receipt which accompanies certified mail. The ECAB has explained that students who use regular mail "do so at their own peril," and the circumstances of this case demonstrate exactly why that policy is reasonable. (Doc. # 5-3 at 7). Thus, J.R.'s third and final argument also must fail.[13]

In summary, the ECAB has provided legitimate reasons for its interpretation of 707 KAR 1:340(12), and the Court is in no position to second-guess the ECAB on matters that are squarely within its expertise. The fact that J.R. sent her petition before the deadline using regular mail is of no consequence, as the doctrine of substantial compliance does not apply to administrative proceedings. And while the ECAB has strayed from its somewhat strict interpretation in the past, the case in which it did so can be readily distinguished from the matter at hand. For these reasons, the Court finds that the ECAB's decision was based on "educational experience" and a "fair estimate of the worth of the testimony," and thus,

---

[13] J.R. places great emphasis on the fact that Mr. Whalen felt bound by *stare decisis* to waive the certified mailing requirement in ruling on her motion to reconsider. However, in doing so, Mr. Whalen provided absolutely no analysis regarding the factual differences between this case and the ECAB's prior decision. Even if he had, the Court would defer to the ECAB's ruling pursuant to *Thomas*. *See* 918 F.2d at 624.

it should not be disturbed on appeal. Having found that subject matter jurisdiction is lacking in this case, the Court need not address Defendants' second argument concerning *res judicata*.

**IV.   Conclusion**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)   Defendants' Motion to Dismiss (Docs. # 5) be, and is hereby, **granted in full**;

(2)   J.R.'s Complaint is hereby **dismissed with prejudice**; and

(3)   This matter is hereby **stricken** from the Court's active docket.

This 6th day of July, 2015.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\Opinions\Covington\2014\14-149 MOO granting MTD.wpd